Louis E. WEISDORFFER, Jr.

v.

Thomas V. TUFARO et al.

Civ. A. No. 78–2278.

United States District Court, E. D. Louisiana.

May 29, 1980.

William Noland, New Orleans, La., for plaintiff.

George R. Simno, III, Deputy City Atty., New Orleans, La., for defendants.

ARCENEAUX, District Judge.

This matter came before the Court on plaintiff's motion for partial summary judgment declaring Sections 30–7, 30–8 and 30–9 of the Municipal Code of the City of New Orleans unconstitutional. In his memorandum and at oral argument, defendant raised the issue of plaintiff's standing to challenge these provisions, and the Court requested additional memoranda confined to that issue. After considering these memoranda furnished by counsel, the previous memoranda and argument in the motion for partial summary judgment, and the applicable law, the Court concludes that plaintiff does have standing to challenge the constitutionality of the relevant sections of the Municipal Code, and that Sections 30–7 and 30–8 of the Municipal Code are unconstitutional.

I. *Factual Background*

Plaintiff, Louis Weisdorffer, owned property at 1118–20 Melpomene Street. Prior to March, 1977, city housing inspectors attempted to inspect plaintiff's premises. Plaintiff refused them admittance.

The housing authorities then caused an affidavit to issue, charging plaintiff in the Municipal Court of the City of New Orleans with violating Sections 30–7 and 30–8 of the Municipal Code of the City of New Orleans, which sections read as follows:
SECTION 30–7.

The Administrator of the Division of Housing Improvement or his duly authorized representatives, upon presentation of proper identification to the owner, agent or tenant, may enter any building or structure used or intended to be used for purposes of human habitation during all reasonable hours to make inspections or examinations of the premises. Such inspections or examinations shall be made in such manner as to cause the least inconvenience to the occupants of the premises.

In cases of emergency where extreme hazards are known to exist which may involve the potential loss of life or severe property damage, the Administrator or his authorized representatives may enter any such building or structure at any time and the above limitations shall not apply.

The owner, agent or tenant of any such building or structure shall give the Administrator or his authorized representatives free access thereto and to all parts thereof and to the premises on which it is located for the purpose of such inspection or examination. (M.C.S., Ord. No. 3511, Section 1, 1–19–67.)
SECTION 30–8.

Any person, either the owner or occupant of a dwelling or dwelling unit, who refuses admittance thereto the Administrator of the Division of Housing Improvement or his duly authorized representatives for the purpose of inspecting such premises shall, upon conviction, be fined not less than ten dollars ($10.00) nor more than fifty dollars ($50.00) or imprisoned not more than thirty (30) days, or both, at the discretion of the court. (M.C.S., Ord. No. 3511, Section 1, 1–19–67.)

The affidavit was allotted and given Municipal Court Case No. 184–371, Section A. Plaintiff pleaded not guilty and filed a motion to quash the affidavit on the grounds that Sections 30–7 and 30–8 of the Municipal Code of the City of New Orleans violated plaintiff's constitutional rights under the Fourth and Fourteenth Amendments of the United States Constitution. The entire case against the plaintiff was subsequently dismissed.

Housing authorities then applied for, and were granted, a search warrant to inspect plaintiff's property, pursuant to Section 30–9 of the Municipal Code of the City of New Orleans:

SECTION 30–9.

If the owner or occupant of any dwelling or dwelling unit refuses admittance thereto of the Administrator of the Division of Housing Improvement or his duly authorized representatives for the purposes of making an examination or inspection of the premises, the Administrator or his representative may make an affidavit before any Judge of the Municipal Court of New Orleans that he believes, or has reason to believe, that by a search of certain premises, designated in the affidavit, he will obtain evidence tending to reveal the existence of violations of this chapter. Upon receiving this affidavit, the Judge shall issue a warrant authorizing the Administrator of the Division of Housing Improvement or his authorized representative to search the premises named in the affidavit and designated in the warrant to obtain evidence tending to reveal the existence of violations of this chapter. (M.C.S., Ord. No. 3511, Section 1, 1–19–67).

With search warrant in hand, housing inspectors allegedly proceeded to break into plaintiff's premises, and conduct an inspection of the premises.

Plaintiff is charging the individual housing inspectors, a policeman present during the search, and the City of New Orleans with violating 42 U.S.C. §§ 1981, 1983, 1985(3) and 1986 and the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments of the Constitution. The thrust of the plaintiff's claim is that Sections 30–7, 30–8 and 30–9 are unconstitutional, that defendants knew or should have known that these sections were unconstitutional, and that by conducting a search pursuant to these sections, defendants violated plaintiff's constitutional rights.

## II. Standing

■ The City of New Orleans argues that plaintiff lacks standing to sue because the charges against Weisdorffer, brought pursuant to Sections 30–7 and 30–8 of Chapter 30, Municipal Code, were dismissed, and a warrant was issued before the actual inspection. Although the case in the Municipal Court of New Orleans was eventually dismissed by the City, plaintiff can still "allege such a personal stake in the outcome of the controversy as to ensure that the dispute sought to be adjudicated will be presented in an adversary context . ." *Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972).

The City's dismissal of the criminal suit does not act to cut off plaintiff's standing in this action. Plaintiff has been charged with criminal acts under the challenged municipal ordinances and the threat of future similar charges remains. Having sufficiently pleaded an "injury", plaintiff has standing to seek redress for damages allegedly caused by the defendants. *Laird v. Tatum*, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972).

## III. The Constitutionality of Sections 30–7, 30–8 and 30–9

In his Motion for Partial Summary Judgment, plaintiff prays that this Court declare Sections 30–7, 30–8 and 30–9 of the Municipal Code of the City of New Orleans unconstitutional, relying on the United States Supreme Court decision in *Camara v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). Plaintiff's reliance is well-founded.

In *Camara v. Municipal Court, supra,* the Supreme Court declared unconstitutional provisions of the San Francisco Municipal

Code which gave the City authority to prosecute a property owner who refused to allow City housing inspectors to conduct an inspection of the premises, even when the inspectors were proceeding without a search warrant. Section 30–7 of the New Orleans Municipal Code is essentially identical to Section 503 of the San Francisco Municipal Code, which the Supreme Court held unconstitutional in the *Camara* case. Section 503 states:

> Sec. 503 RIGHT TO ENTER BUILDING. Authorized employees of the City departments or City agencies, so far as may be necessary for the performance of their duties, shall, upon presentation of proper credentials, have the right to enter, at reasonable times, any building, structure, or premises in the City to perform any duty imposed upon them by the Municipal Code.

The unconstitutional aspect of this regulatory scheme was the elimination of the search warrant requirement which protects citizens from unreasonable searches and seizures pursuant to the Fourth and Fourteenth Amendments.[1]

Furthermore, Section 30–8 of the New Orleans Municipal Code tracks Section 507 of the San Francisco Municipal Code, the penalty provision of the regulatory scheme which was also declared unconstitutional in the *Camara* case. Section 507 states:

> Sec. 507 PENALTY FOR VIOLATION.
>
> Any person, the owner or his authorized agent who violates, disobeys, omits, neglects, or refuses to comply with, or who resists or opposes the execution of any of the provisions of this Code, or any order of the Superintendent, the Director of Public Works, or the Director of Public Health made pursuant to this Code, shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine not exceeding five hundred dollars ($500.00), or by imprisonment, not ex-

ceeding six (6) months or by both such fine and imprisonment, unless otherwise provided in this Code, and shall be deemed guilty of a separate offense for every day such violation, disobedience, omission, neglect or refusal shall continue.

Plaintiff argues that Section 30–9 of the New Orleans Municipal Code is unconstitutional as well because it allows a search warrant to be issued on less than probable cause. Under Section 30–9, the housing inspector need only state in an affidavit that he "believes, or has reason to believe" that a search of the premises will reveal the existence of Municipal Code violations.

Although *Camara* required that search warrants be obtained before inspecting residential property without the owner's consent, the Court refused to apply the standard of probable cause applicable in criminal cases.

> (A)ppellant argues not only that code enforcement inspection programs must be circumscribed by a warrant procedure, but also that warrants should issue only when the inspector possesses probable cause to believe that a particular dwelling contains violations of the minimum standards prescribed by the code being enforced. *We disagree.*

387 U.S. at 534, 87 S.Ct. at 1734 (emphasis added). The *Camara* Court found area inspection searches of private property to be "reasonable" within the meaning of the Fourth Amendment. 387 U.S. at 538, 87 S.Ct. at 1735. However, it noted that the standard of reasonableness would vary with the municipal program being enforced. Such standards, according to the Court:

> . . . may be based upon the passage of time, the nature of the building . . ., or the condition of the entire area, but they *will not necessarily depend upon specific knowledge of the condition of the particular dwelling.*

---

1. The City argues that Section 30–7 is not unconstitutional as applied in this case because the police did not use force to inspect plaintiff's premises without a warrant. This argument cannot be supported in view of the fact that

ordinance 30–8 provides penalties for refusal to permit a warrantless search, and defendants actually invoked this criminal penalty provision against the plaintiff.

387 U.S. at 578; 87 S.Ct. at 1736 (emphasis added).

■ Applying the *Camara* rational to Section 30–9 of the New Orleans Municipal Code, it is clear that the Code's search warrant procedure is not unconstitutional on its face. Under Section 30–9, the housing inspector must submit an affidavit before a Judge of the Municipal Court of New Orleans which states that he believes, or has reason to believe, that a search will reveal the existence of Code violations. As noted in *Camara*, the inspector need not have actual knowledge of the condition of the dwelling.

■ Sections 30–7 and 30–8 of the New Orleans Municipal Code are clearly unconstitutional under the standard set forth in the *Camara* opinion; Section 30–9 facially meets those constitutional requirements. Therefore, plaintiff has the burden of proving that it was unconstitutional as applied in his case.[2]

Motion for Partial Summary Judgment GRANTED in part; DENIED in part.

2. This motion is concerned solely with the constitutionality of the challenged municipal ordinances and makes no attempt to determine the validity of federal causes of action or any possible individual liability on the part of local officials acting under color of law.